**[Cite as *In re L.R.*, 2020-Ohio-5299.]**

STATE OF OHIO        )
)ss:
COUNTY OF LORAIN    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: L.R.
     L.R.
     L.R.
     M.R.

C.A. Nos.    19CA011602
                 20CA011606


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   17JC51903
              17JC51904
              17JC51905
              17JC51939

DECISION AND JOURNAL ENTRY

Dated: November 16, 2020

TEODOSIO, Judge.

{¶1} Appellants, L.P. ("Mother") and M.R. ("Father"), appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed their minor children in the permanent custody of Lorain County Children Services ("LCCS"). Because Father failed to file a complying brief, his appeal (19CA011602) is dismissed. Mother's appeal of the decision on the merits (20CA011606) is affirmed.

I.

{¶2} Mother and Father are the biological parents of several children and have a history with children services agencies in Lorain County and other counties dating back several years. This case involves four of their children: L.R., born September 15, 2013; L.R., born October 18,

2014; L.R., born December 11, 2015; and M.R., born June 12, 2017. Mother gave birth to another child during this case, but that child is not a party to this appeal.

{¶3} While Mother was still pregnant with M.R. and the family was in Mahoning County, they became involved with the children services agency there after an incident of domestic violence between Mother and Father. Mother obtained a restraining order and came to Lorain County. After Mother relocated to Lorain County, she refused to cooperate with LCCS, and continued to allow Father to care for the children. LCCS was concerned about the family's transient lifestyle, Father's erratic and irrational behavior and his refusal to address his unstable mental health, and Mother's own mental health problems and her failure to understand the risk that Father posed to the children. LCCS filed complaints and the three L.R. children were removed from the home. When M.R. was born a few days later, he was also removed from his parent's custody.

{¶4} The three oldest children were later adjudicated neglected and dependent and M.R. was adjudicated dependent. All four children were placed in the temporary custody of LCCS. This Court affirmed the adjudications and initial dispositions on appeal. *In re L.R.*, 9th Dist. Lorain Nos. 18CA011378 and 18CA011385, 2019-Ohio-1152.

{¶5} Of particular concern to LCCS was the unstable mental health of both parents and their volatile behavioral outbursts. The case plan required Mother to obtain a psychological assessment and follow all treatment recommendations and to obtain and maintain stable employment and housing. Although Mother obtained an assessment, she did not follow up with any treatment or parenting classes.

{¶6} For reasons she did not explain, Mother moved from town to town throughout this case, remaining unemployed and staying primarily in homeless shelters. She continued her

relationship with Father and refused to engage in any reunification services. Mother refused to cooperate with LCCS and continued to exhibit erratic behavior throughout this case. Moreover, she failed to maintain regular contact with LCCS, the trial court, or her children.

{¶7} LCCS eventually moved for permanent custody of these four children. Father appeared at the hearing via teleconference, but Mother failed to appear. According to Father, Mother needed to work at the hospital in Minnesota where she was employed and could not attend the hearing. Both parents were represented by counsel at the hearing.

{¶8} Following the hearing on the motion, the trial court terminated parental rights and placed L.R., L.R., L.R., and M.R. in the permanent custody of LCCS. Mother appeals and raises three assignments of error. This Court will address her first two assigned errors together for ease of discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT (1) FAILED TO MANDATE THE APPLICATION OF THE INTERSTATE COMPACT FOR THE PLACEMENT OF CHILDREN TO SUPPORT MOTHER'S ATTEMPTS TO REMEDY HER PARENTING PROBLEMS AND TO ALLOW HER TO ENGAGE IN SPECIFIC RECOMMENDED SERVICES CLOSER IN PROXIMITY TO HER RESIDENCE AND (2) DENIED MOTHER'S REQUEST UNDER THE UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT TO TRANSFER THE ENFORCEMENT OF THE DISPOSITIONAL ORDERS OF THIS CASE TO [A] MORE CONVENIENT FORUM[.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS [LCCS'] MOTION FOR PERMANENT CUSTODY WHEN THAT AGENCY, DESPITE BEING REQUIRED TO PROVIDE REASONABLE EFFORTS, HAD NOT PROVIDED THE SERVICES REQUIRED BY THE CASE PLAN TO THE PARENTS OF THE CHILDREN, OR THE CHILDREN, TO ENSURE THE SAFE RETURN OF THE CHILDREN TO THE CHILDREN'S HOME.

{¶9} Mother's first and second assignments of error assert that LCCS and the trial court failed to make adequate efforts to assist her in complying with the reunification goals of the case plan. First, Mother asserts that the trial court should have transferred the case from Lorain County because she was living out of state throughout most of this case.

{¶10} Mother relies on R.C. 3127.21(B), which provides that a trial court "may" transfer a custody matter to another state if it determines that the other state is a more convenient forum. Consequently, "we review a trial court's determination under R.C. 3127.21(B) for an abuse of discretion." *Reed v. Sims*, 9th Dist. Lorain No. 19CA011494, 2020-Ohio-2777, ¶ 4.

{¶11} Mother argues that, because she relocated out of state, this case should have been transferred to where she was residing. Aside from the fact that Mother relocated to more than one state during this case, R.C. Chapter 3127 focuses on interstate transfer of custody cases because the child, not the parent, has relocated to another state. R.C. 3127.01(B)(7) defines the "home state" as the state in which the child lives with a parent or person acting as parent. *See also* R.C. 3127.27(B)(2) (a factor that focuses on the child living in another state).

{¶12} Mother argues that her children's home state is the same as hers. She relies on R.C. 2151.06, which provides that "a child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis." Because she is the children's parent, she asserts that the children legally reside with her and that their home state changed when she moved out of state.

{¶13} Mother's argument ignores the legal significance of the juvenile court's orders in this case that removed these children from her physical and legal custody, adjudicated them neglected and/or dependent, and placed them in the temporary custody of LCCS. The children remained in LCCS temporary custody throughout this case. R.C. 2151.011(B)(55) defines

"temporary custody" as "legal custody of a child who is removed from the child's home[.]" After the children were placed in the temporary custody of LCCS, the agency became the children's legal custodian and stood in place of their parents. Pursuant to R.C. 2151.06, the children's legal residence throughout this case was in Lorain County. Therefore, the trial court did not abuse its discretion by failing to transfer this case elsewhere.

{¶14} Mother further argues that the trial court should have dismissed the permanent custody motion because LCCS did not exert reasonable efforts to reunify her with her children. In addition to Mother's failure to raise this issue in the trial court, she relies on a subsection of R.C. 2151.413(D)(3)(b) that requires reasonable reunification efforts before an agency may move for permanent custody under the "12 of 22" ground. LCCS did not move for permanent custody on the "12 of 22" ground, so that statute is inapplicable here.

{¶15} Furthermore, the record reveals that LCCS made reasonable efforts to attempt to reunify Mother with her children. The evidence was not disputed that Mother left Lorain County multiple times during this case and lived in several different cities and states for brief periods of time. There is no evidence that she continued moving because she had employment or other opportunities to better herself elsewhere. She typically remained unemployed and lived in homeless shelters, did not keep the caseworker updated about where she was, and did not remain in any one location long enough to engage in services there.

{¶16} After the caseworker learned that Mother had moved to Georgia, she attempted to coordinate services for Mother there, but Mother returned to Lorain County. Mother completed a mental health assessment early in this case, but she refused to follow up with the recommended counseling, parenting instruction, or anger management classes because she did not believe that she needed services.

{¶17} By the time the hearing began, the caseworker, the guardian ad litem, and Mother's own attorney did not know where Mother was residing because they had not heard from her for several months. Father first informed his attorney that Mother was living in Chicago but then testified that Mother was living in Minnesota. Father refused to provide the court with Mother's address.

{¶18} The undisputed evidence before the trial court revealed that Mother's failure to be reunified with her children was not caused by a lack of reunification efforts by LCCS. Instead, Mother made the choice to continue moving from place to place outside Lorain County, refused to engage in reunification services, and failed to maintain contact with the parties to this case including her young children. Mother's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED WHEN IT FOUND THAT IT WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF [LCCS][.]

{¶19} Mother's final assignment of error challenges the trial court's permanent custody decision on the merits. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the children or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the

children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶20} The trial court found that the first prong of the permanent custody test was satisfied for multiple reasons under R.C. 2151.414(E), including that the parents had failed to substantially remedy their parenting problems that had caused the children to be placed outside the home; they had demonstrated a lack of commitment to the children; and they had abandoned the children. R.C. 2151.414(E)(1), (4), and (10). Mother does not challenge any of those findings.

{¶21} Instead, Mother focuses her argument on whether permanent custody was in the best interest of L.R., L.R., L.R., and M.R. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, the need for permanence in their lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. The trial court found that the factor set forth in R.C. 2151.414(E)(10) applied to the facts of this case because Mother had abandoned all four children.

{¶22} Mother's interaction with her children during this case was limited to supervised visitation because she did not work on the reunification goals of the case plan. Mother was offered weekly visitation but, because she repeatedly moved away from Lorain County for months at a time, Mother did not see the children on a regular basis. Even while Mother resided in Lorain County, she did not visit with the children regularly.

{¶23} During the visits that Mother did attend, she often yelled at the supervisor, her children, and/or others at the visitation center. The guardian ad litem observed little interaction between Mother and the children during visits and he believed that the children were afraid of her.

During a visit on May 16, 2018, Mother began screaming at everyone, and LCCS staff and the sheriff's deputies were unable to control her outburst. They escorted Mother out of the visit and the trial court later suspended her visits until she had engaged in mental health treatment and could demonstrate the ability to control her behavior. Mother never complied with that requirement, so her visits were not reinstated. By the time of the hearing, Mother had not seen her young children for more than 16 months.

{¶24} On the other hand, all four children had been living in the same foster home for almost one year by the time of the hearing. The caseworker explained that the foster mother was very engaged with the children's counseling and Help Me Grow services. The children were doing well in that home and had developed a strong bond as siblings and with the foster parents. The guardian ad litem testified that, during his twelve years serving in that role, he had never seen children bond so strongly with a foster family. He described the loving relationship he observed in the foster home as "just unbelievable." The foster parents were interested in adopting all four children.

{¶25} The guardian ad litem testified about the wishes of the children. He explained that the oldest two children had told him that they want to stay with their current foster family. The youngest two children had not expressed their wishes to the guardian ad litem, and he had not asked them because they were young and had spent most of their lives in foster care. The guardian ad litem opined that permanent custody was in the best interest of all four children because Mother had not worked toward reunification and had not maintained contact with her children during this case.

{¶26} The custodial history of these children had been spent primarily in the custody of a children services agency. The older children had been removed from their parents' custody in

Franklin County. During this case, the children had spent more than two years in LCCS temporary custody. These young children had spent most of their lives moving in and out of temporary homes and needed a legally secure permanent placement. Their parents were not prepared to provide them with a stable home and LCCS had been unable to find a suitable relative who was willing to do so.

{¶27} Finally, the trial court was required to consider its finding that Mother had abandoned her children under R.C. 2151.414(E)(10). R.C. 2151.414(D)(1)(e). R.C. 2151.011.(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." During this case, Mother repeatedly moved from town to town and failed to maintain contact with the children for more than one period of over ninety days. Mother never explained to LCCS why she kept leaving Lorain County while her children were in agency custody.

{¶28} The evidence before the trial court fully supported its decision that permanent custody was in the best interest of L.R., L.R., L.R., and M.R. Mother's third assignment of error is overruled.

III.

{¶29} Father's appeal (19CA011602) is dismissed for failure to file a complying brief. Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LORIE K. BROBST, Attorney at Law, for Appellant.

M.R., pro se, Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

CLAUDE THOMPSON, Guardian ad Litem.

MICHAEL TOWNE, Guardian ad Litem.

JAMES BARILLA, Guardian ad Litem.